IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COREY LAMONDE JAMES, #246-652　　*
　　　　　Plaintiff
　　v.　　　　　　　　　　　　　　*　　CIVIL ACTION NO. AW-10-2272

FRED NASTRI, et al.,　　　　　　*
　　　　　Defendants
　　　　　　　　　　　　　　　***

## MEMORANDUM OPINION

Pending is a Motion to Dismiss or for Summary Judgment filed on behalf of Defendants Joseph F. Neder, John Rowley, Bobby Shearin, and David Wilhelm.[1] ECF No. 15. Plaintiff has responded.[2] ECF No. 19. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

---

[1] Defendants Nastri, Moore, Cowen, Combs, Bryant, and Davis have not been served with the complaint. For the reasons that follow, even if they had properly been served, Plaintiff's complaint against them in so far as it concerns the March, 2006 adjustment hearings would be subject to dismissal.

[2] Plaintiff has filed a Motion for Appointment of Counsel. ECF No. 14. The motion shall be denied. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1)[2] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). The Court finds from its review of the documents before it that Plaintiff is able to adequately articulate the facts and grounds for relief in the instant matter without notable difficulty. Moreover, the complaint is not of undue complexity.

Plaintiff has also filed a Motion to Amend. ECF No. 20. The Motion shall be denied. See Fed. R. Civ. Pro. 15(a).
In both Plaintiff's opposition to the pending dispositive motion and in his motion to amend he raises claims outside those contained in the original complaint. Those claims include: conditions of confinement; his segregation sentence was suspended and then improperly reinstated; his segregation sentence was "outside the matrix"; the adjustment hearing was held in violation of the Administrative Procedure Act; he was denied access to the courts; and Defendants Moore, Cowen, and Combs made false statements. These claims shall not be considered here. If Plaintiff believes that his civil rights were violated beyond the facts alleged in his original complaint he is free to file a new civil rights complaint detailing those allegations. The Clerk shall be directed to provide Plaintiff a form to assist him.

## Background

Plaintiff alleges that on January 6, 2006, Officer David Wilhelm wrote Plaintiff an infraction accusing Plaintiff of participating in a "disturbance." Plaintiff states that during the adjustment hearing held on March 30, 2006, Wilhelm perjured himself. Plaintiff further alleges that he sought to have Hearing Officer ("HO") Fred Nastri recuse himself from an adjustment hearing held on March 23, 2006, because Nastri had "oversee[n] [inmate] John Ashby." As relief, Plaintiff seeks injunctive relief including his transfer from Maryland under the Interstate Corrections Compact. ECF No. 1.

The record demonstrates that Officers Moore, Cowan and Combs filed infractions against Plaintiff alleging his involvement in a prison disturbance on January 5, 2006. The cases were first heard on March 9, 2006, by HO Davis. Davis indicated the infraction reports written by Cowan and Combs were made part of the record as well as a video tape of the incident. Davis noted that Plaintiff requested the HO review the video tape and Davis advised Plaintiff he had previously reviewed the video tape in another case.

Plaintiff was represented at the hearing by an inmate representative. Plaintiff argued that the infractions should be set aside as he did not receive a hearing on the infractions within the time prescribed by Division of Correction Directives. Davis noted that Sgt. Wolford addressed the reasons for the delay in the hearing—that 46 separate notices were reviewed as a result of the January 5, 2006 disturbance. Plaintiff sought to call Officers Cowan and Wilhelm and Inmate Burgess as witnesses. Cowan, the report writer, was unavailable, and the hearing was postponed at Plaintiff's request. ECF No. 15, Ex. 1, p. 1-4.

The hearing reconvened before Davis on March 30, 2006. Plaintiff was again represented by an inmate representative. The infractions written by Cowan and Combs were again made part of the record as were the notes made at the previous hearing. Plaintiff's request to download digital photos from the video tape was denied due to "security issues." Davis's notes reflect that Plaintiff sought to demonstrate inconsistencies in the reports of the disturbance written by Combs, Moore, and Wilhelm. Plaintiff denied being part of the disturbance. *Id*., pp. 5-6.

Cowan's Notice of Inmate Rule Infraction averred that on January 5, 2006, while assigned to Housing Unit 6, C Wing he observed Officer Combs begin his rounds and radio to open the cell doors of the inmates in the recreation hall. After officers on duty took their duty stations, Combs requested that the recreation hall slider be opened so the inmates could return to their cells to lock in. As the slider opened Officer Moore yelled there was a fight on the North Side. As Moore and Cowan started down the steps they were met by a group of nine inmates. Inmate Sabien Burgess threw batteries at Officers Moore and Cowan, shouting "You two are dead mother fuckers!" Other inmates threw a floor fan at Moore and Cowan. Moore and Cowan fended off the attack with pepper spray. While this was happening other inmates obtained pepper spray. They returned and sprayed Moore and Cowan with the pepper spray. Other inmates threw chairs at Moore and Cowan while Cowan shouted commands at the inmates to lock into their cells. During this time, Cowan observed other inmates attacking Combs with closed fists and a phone receiver. Moore continued to apply pepper spray while Cowan went to the aid of Combs and placed Combs in an empty cell for safety. Cowan and Moore then advanced to the North Side of the wing where they could see Sgt. White and Officer Wilhelm enter the North Side of the wing from the lobby applying pepper spray with foggers, causing the inmates to retreat to the back of the wing. As Cowan entered the North Side he

saw Officer McFarland under the North Side officers panel bleeding from his head while attempting to defend himself from the assault of inmate Mathew O'Brien. Cowan pulled O'Brien off of McFarland and O'Brien left the immediate area. Cowan assisted McFarland off of the wing to the lobby area.

When he returned Cowan observed Plaintiff, along with fourteen other inmates, advancing on Sgt. White and Officer Wilhelm as the pepper spray foggers became ineffective. Cowan instructed White and Wilhelm to leave the wing. As the officers were exiting inmate Scoates threw a floor fan at Cowan, striking him. As the officers stepped into the lobby, Cowan ordered the wing slider closed. Inmate Barstad approached the closed slider and pointed to the back of the wing where Officer McKenzie lay motionless on the floor. Inmate Barstad pointed to McKenzie and told Cowan, "I'm going down there and fuck him in the ass, then I'm going to kill that mother fucker." Barstad then moved toward McKenzie. A large group of officers appeared in the lobby area, causing the inmates to leave McKenzie and retreat to the south side. With sufficient staff in place the order was then given to secure the area. After the incident, Cowan reviewed the videotape, and further averred that he identified Plaintiff dragging a wing fan to use as a weapon. *Id.,* pp. 10-13.

Comb's Notice of Inmate Rule Infraction indicated that he was attacked and knocked to the floor twice by inmates. After a careful review of the videotape, he identified Plaintiff, in his report, as one of his assailants. *Id*. p. 14-15. Wilhelm's report indicated that he observed Plaintiff participating in the group of inmates assaulting staff and also observed Plaintiff damage security equipment to facilitate riotous behavior, incitement, and attempted murder. *Id.,* p. 29.

Nearly three months after the incident, Cowan testified telephonically from home that he did not identify Plaintiff as a participant in the disturbance. He explained that there were contradictions

4

in the prepared reports due to "each person focus[ing] on something." Wilhelm also testified telephonically from home. He stated that he prepared the infraction based on the video. He further testified that Plaintiff "caused confusion." Inmate Burgess also testified at the hearing. He testified that Plaintiff did not punch anyone during the disturbance. *Id.*, pp. 5-6.

In light of the foregoing, Davis found it more likely than not that Plaintiff participated with other inmates in the disturbance. He found Plaintiff was an accessory to a Rule 101 violation for participating in advancing on Sgt. White and Officer Wilhelm as seen by Cowan. Davis found this an attempted assault and battery upon staff. He also found Plaintiff dragged a floor fan and attempted to use it as a weapon ant that fans were thrown by inmates at officers. Accordingly, Plaintiff was found to be an accessory to a rule 105 violation. Davis further found Plaintiff guilty of a separate violation of Rule 101 for assaulting Combs. Davis found Plaintiff's arguments regarding his innocence and the inconsistencies in reports to be unpersuasive in light of the institutional evidence. Davis found the two officer witnesses to have been adverse to Plaintiff's arguments and that the notices written by Cowan and Combs were credible and reliable. *Id.* pp. 7-8.

Plaintiff's other infractions arising from this event, charged by Officer Moore, were heard by HO Nastri on March 23, 2006. In his Notice of Inmate Rule Violation, Moore avers that on January 5, 2006, he observed inmates in the recreation hall rush and attack Officer Combs. Moore shouted to Cowan "Fight on the North side!" and began running to assist Combs. When he got to the staircase several inmates rushed to his location in an aggressive manner shouting, "We're going to kill you mother fuckers!" Inmates threw chairs, batteries and fans. Moore sprayed pepper spray at the inmates. Plaintiff, along with seven other inmates, charged

5

toward Moore aggressively. Moore ran to the top of the staircase and again sprayed the charging inmates with pepper spray. Inmates who had obtained pepper spray then attempted to advance on Moore and Cowan while spraying pepper spray. Plaintiff, along with other inmates including John Ashby, came through the center wall doorway on the second charge toward Moore and Cowan. Moore applied pepper spray and the inmates turned and ran down the staircase. Moore observed several inmates striking Combs. Moore observed McFarland under the north side officers station bleeding and being assaulted by an inmate. Cowan pulled the inmate from McFarland and took McFarland off the wing. Moore avers that the inmates again charged in an aggressive manner and threw a large fan at Cowan. The lobby sliders closed and then Moore shouted "They've got Randy!" (Officer McKenzie). Inmate Barstad came to the slider and stated, "I'm going to fuck that officer in the ass and then I'm going to kill that mother fucker!" He then moved toward McKenzie who lay motionless at the end of the wing. A large group of officers had responded to the unit. Inmates picked up items to use as weapons. Once the order could be enforced, it was given to secure the wing. *Id*., pp. 22-24.

  The Notice of Inmate Rule Violation written by Officer Moore, testimony of Officer Moore, and videotape were reviewed by Nastri. Plaintiff was represented by an inmate representative. Plaintiff called Moore and inmate Burgess as witnesses. He waived calling of Cowan as a witness. Moore testified that "all was going crazy" at the time of the riot and Plaintiff charged at him in an aggressive manner repeatedly during the eighteen minute riot. The HO found Plaintiff participated and conspired in the commission of the riot by aggressively charging at Moore in an assaultive fashion and participated in the riot on the tier. The HO indicated that he reviewed the videotape and observed all fifteen inmates exiting the recreation

6

hall which contradicted Plaintiff's testimony that he stayed inside the recreation hall the entire time. Additionally, the HO found Moore's testimony credible including Moore's identification of Plaintiff as a participant in the riot. HO Nastri further found Plaintiff's defense "unreliable and without credibility." Plaintiff was found guilty of violating rules 100, 101 and 312. He was sentenced to a total term of 880 days disciplinary segregation. No good conduct credits were revoked, as Plaintiff had none left to revoke. *Id.,* pp., pp. 20-22.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

In prison disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U. S. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

Plaintiff received all the process he was due. He was given timely advance written notice of the infraction and was permitted to attend the disciplinary hearing. He received a postponement of his disciplinary hearing in order that his requested witness could testify. He had an inmate representative and his requested witnesses at both hearings. He received written findings of the hearing officers. Plaintiff's requests, at both hearings, to have access to still images from the video cameras were denied based on institutional security concerns. Plaintiff's contention that the reports written by the responding officers contained inconsistencies was unavailing. The officers who wrote reports and charged Plaintiff with rule violations were responding to a volatile situation wherein at least fifteen inmates participated in a riot lasting eighteen minutes during which several officers were left incapacitated. Each of the responding officers wrote their reports from their perspective with the inmates and threats they were focused on at the time. Any inconsistencies in the reports are

immaterial. Additionally, Plaintiff's bald allegation that Hearing Officer Nastri should have recused himself from Plaintiff's adjustment hearing because he oversaw the adjustment hearing of Inmate Ashby is unavailing. The hearing officers' determination of guilty findings were based upon some evidence, i.e. review of Plaintiff's testimony, the videotape, the written record, testimony of the inmate witness and testimony of the responding officers, upon which the hearing officers based determinations as to credibility and demeanor. Plaintiff received all the process he was due as to both adjustment hearings arising from his participation in the January 5, 2006 riot.

## Conclusion

In light of the above analysis, Defendants' dispositive motion, treated as a Motion for Summary Judgment shall be granted. A separate Order follows.

Date: _____          _____
                             Alexander Williams, Jr.
                             United States District Judge